

AO 106 (Rev. 04/010) Application for Search Warrant     AUTHORIZED AND APPROVED/DATE:

# UNITED STATES DISTRICT COURT
for the
_____WESTERN_____ DISTRICT OF _____OKLAHOMA_____

In the Matter of the Search of )
)
Black IPhone XS Max with Broken Screen ) Case No: MJ- 21-264-AMG
(With Protective Cover) )

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is:
☒ evidence of the crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §1801 and § 1152 | Video Voyeurism in Indian Country |

The application is based on these facts:

See attached Affidavit of Special Agent Micah Ware, U. S. Department of Interior, Bureau of Indian Affairs, which is incorporated by reference herein.

☒ Continued on the attached sheet(s).
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

_____
*Applicant's signature*

Micah Ware
Special Agent
U. S. Department of Interior, Bureau of Indian Affairs

Sworn to before me and signed in my presence.

Date: 4/26/21

_____
*Judge's signature*

City and State: Oklahoma City, Oklahoma      AMANDA M. GREEN, U.S. Magistrate Judge
                                             *Printed name and title*

# THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Micah Ware, a Special Agent with the United States Department of Interior, Bureau of Indian Affairs (BIA), Office of Justice Services (OJS), being duly sworn, depose and state as follows:

1. I am presently employed as a Special Agent with the United States Department of Interior, Bureau of Indian Affairs (BIA), Office of Justice Services (OJS) District II Criminal Investigations and have been so employed since April 2012. I have been employed with the BIA-OJS as a federal commissioned law enforcement officer since June 2010.

2. As a Special Agent, I have authority to investigate violations of federal law. I also have authority to seek and execute federal process, to include criminal complaints and search warrants. The information in this affidavit is based on my personal knowledge and information provided to me by other law enforcement officers and individuals. The information in this affidavit is provided for the limited purpose of establishing probable cause for a search warrant. As this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation.

3. I have set forth only the facts that I believe are necessary to establish probable cause to believe that video voyeurism has been committed in violation of Title 18, United States Code, Sections 1801 and 1152 and that the instrumentalities, fruits, and evidence of those crimes will be found in a particular place to be searched.

4. This affidavit is made in support of a search warrant for the following items, which are currently in the legal custody of the BIA Concho Agency:

1

      1.    Black iPhone XS Max with broken screen. (With Protective Cover)

which is currently stored in the BIA Concho Agency Evidence POD, located in Concho, Oklahoma. I am submitting this affidavit in support of a search warrant authorizing a search of the DEVICE listed above and in Attachment A for the items described in Attachment B hereto, which content and information constitute instrumentalities, fruits, and evidence of the foregoing violation.

## BACKGROUND REGARDING SMARTPHONES

5.    Based on my training, experience, and knowledge, I know the following:

    a.    A "smartphone" is a mobile device that combines cellular and mobile computing functions into one unit. Modern digital file storage devices such as "smart phones" like iPhones and even regular cell phones have the ability to store images and video in digital form on the phone itself and on storage media compatible with them. Accordingly, digital files such as movies and pictures can be quickly and easily transferred back and forth between other devices or stored simultaneously and indefinitely on other devices. Such devices—even very small ones—can store very large amounts of digital files.

    b.    I know that digital evidence, including pictures and videos, generally remains indefinitely on a digital storage device such as a cell phone until deleted or overwritten. I also know that even if a cell phone user deletes such evidence, a computer forensic expert can sometimes still recover it from the device using forensic tools months, even years, after the fact. I know that a forensic examination of a device by a qualified computer expert can often reveal whether data has been deleted, transferred, or uploaded to other devices, applications, and/or the internet.

2

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

6. Searches and seizures of evidence from computers and other digital file storage devices commonly require agents to download or copy information from the devices and their components, or seize most or all devices (computer hardware, cell phones, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

   a. Digital file storage devices can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, especially with computers, depending on the volume of data stored, and is generally difficult to accomplish on-site.

   b. Searching digital file storage devices, especially computers, for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

## BACKGROUND OF INVESTIGATION

The facts establishing probable cause to support the issuance of a search warrant are as follows:

7. On Monday, March 29, 2021 at approximately 1:09 p.m., BIA/Cheyenne and Arapaho Tribal Officer Colin Candy was notified by the BIA Anadarko Agency Dispatch Center of a call at the Lucky Star Travel Plaza C-Store identified as 7799 N. Highway 81, El Reno, Oklahoma, in Canadian County, within the Western District of Oklahoma. The Lucky Star Travel Plaza C-Store was identified on BIA sponsored ArcGIS Collector, an overlay map identifying trust land, as being land held in trust under the jurisdiction of the United States Government and is Indian Country.

8. Officer Candy was advised that an adult Indian female, hereafter referred to as R.T., was wanting to make a report of a male subject recording her inside the bathroom. Officer Candy arrived at the Lucky Star Travel Plaza C-Store and conducted an interview with R.T. at approximately 1:44 p.m.

9. R.T. told Officer Candy that she went to the bathroom around 12:30 p.m. to 12:35 p.m. and that she went to the last stall in the bathroom. R.T. heard someone come in and she looked down and saw brown boots in the stall next to her. R.T. said the feet were still facing the toilet. R.T. said she started trying to get up and when she looked up, she saw an iPhone going over the (top) edge of the stall. R.T. saw that it was a man, asked what he was doing, and cursed at him. R.T. heard him take off out the door, and she got up and followed him.

10. R.T. told the clerk what happened and pointed him out because he was checking out at the register. R.T. said he walked out the door and that security never came. R.T. followed him and he got into a white truck with a company name on the side and an Oklahoma tag. R.T. said the male subject drove off. R.T. reported the incident to the Lucky Star Casino Security, who then notified

4

BIA Concho Agency Police. R.T. told Officer Candy that he was wearing brown boots, jeans, and a blue mask. R.T. thought he may have had a brown jacket on and that he was a tall white guy.

11. On Wednesday, March 31, 2021 at approximately 12:40 p.m., Officer Candy was again contacted by the BIA Anadarko Agency Dispatch Center and advised the Lucky Star Casino Security reported the alleged suspect from the previous incident (2 days prior) was back at the Lucky Star Travel Plaza C-Store. Officer Candy arrived and observed a Lucky Star Casino Security Officer blocking a white Ford pickup truck parked near the entrance to the Travel Plaza C-store.

12. Officer Candy was advised by the security officer that the white Ford F-250 pickup truck was the same vehicle from the previous incident. Officer Candy then contacted the casino security Supervisor Darrick Hummingbird, and they contacted the alleged subject inside the casino portion of the Travel Plaza C-Store. The subject was identified as an adult Hispanic male named OSWALDO FLORES. FLORES admitted to Officer Candy that he was in the women's bathroom on Monday, March 29, 2021.

13. FLORES said he walked into the woman's bathroom and noticed there were no urinals. FLORES explained he was leaving and noticed a woman. FLORES said the woman stated to him, "you're an asshole." FLORES said he walked out and that was it. Officer Candy and Security Supervisor Hummingbird began asking FLORES about the issue observed the current day, Wednesday, March 31, 2021. Security Supervisor Hummingbird advised FLORES that he was observed by surveillance going back into the women's restroom today. Officer Candy asked FLORES if he went back into the women's bathroom today and FLORES explained he did and that he was not going to lie.

14. Officer Candy believed he lacked criminal jurisdiction over FLORES because he was not

5

an enrolled tribal member of a federally recognized Indian tribe, so he contacted the Canadian County Sheriff's Department and requested a deputy to respond and investigate the matter. Canadian County Sheriff's Deputy Michael Larimer arrived at the Lucky Star Casino C-Store and conducted interviews with FLORES and the victim (R.T.) from the March 29, 2021 incident. R.T. was summoned to the casino to aid the investigation. Deputy Larimer learned that R.T. was an enrolled tribal member and advised Officer Candy that they (Canadian County Sheriff's Office) did not have criminal jurisdiction since the incident involved a tribal member victim. Deputy Larimer then advised FLORES that he was free to leave.

15. On Tuesday, April 6, 2021 at approximately 11:07 a.m., Officer Candy and I contacted FLORES at his worksite on Highway 81 a few miles south of the Lucky Star Travel Plaza C-Store. I waved FLORES over and he agreed to sit in my patrol unit in the front passenger's seat. I explained to FLORES that he was not under arrest and that I had no intention of arresting him now or at the conclusion of the interview today. I advised FLORES the doors were unlocked, and he was free to leave at any time. FLORES participated in an audio-recorded interview with Officer Candy and me.

16. FLORES confirmed that he was contacted by BIA and County Officers (Canadian County Sheriff's Department) at the casino and that they looked at his cell phone referencing an allegation involving him going into a women's stall. FLORES confirmed he still had the cell phone on his person and agreed to let me look at the cell phone. I recognized the cell phone as being a black cell phone with a broken screen.

17. FLORES initially denied attempting to video record anyone in the women's bathroom but later described on the day when this happened, FLORES seen that lady (R.T.) go in there and he went in there. FLORES said she went to that stall and he was going to record. FLORES said he

put his phone up there, but he guesses that is when she (R.T.) seen. FLORES said it was not recording. FLORES said he put it down and she said, "you asshole." FLORES said he stepped out.

18. I explained that he admitted to a potential federal violation and I then advised FLORES of his *Miranda* warnings. FLORES waived his rights and agreed to speak with me. FLORES confirmed he told the deputies and officers that it was an accident that he went into the bathroom. FLORES said he was going to record her (R.T.)

19. FLORES denied doing this in the past initially but then admitted he had done it in El Paso. I explained video voyeurism to FLORES, and he agreed he did that once. FLORES confirmed that is what he attempted to do this time, trying to video record her (R.T.) without her consent while she was undressed in the bathroom. FLORES confirmed the phone I had of his was the phone he was trying to video record her (R.T.) with. Toward the end of the interview and after some initial hesitancy on whether he would provide consent to search, FLORES provided written consent to search his cell phone which he identified as being an iPhone XS Max. FLORES went back to work after the interview.

20. On Wednesday, April 7, 2021, at approximately 1:15 p.m., I contacted Brandon Frantz, a Homeland Security Investigations (HSI) Computer Forensic Analyst. I had FLORES's cell phone with me and was going to have Frantz perform an extraction of the cell phone in a forensically sound manner. Frantz advised since the iPhone had a passcode and it had been powered down, he would need to have a partner agency perform a "greykey" to hopefully unlock the iPhone. Frantz suggested I reach out to FLORES and ask for the passcode for his cell phone. I had BIA Lt. Lonnie Spiva contact FLORES at his work site where I spoke with FLORES over speaker phone with Lt. Spiva's cell phone.

21. I advised FLORES I was with HSI to have his cell phone examined and I asked for his

passcode. FLORES said I needed to speak with his attorney. FLORES then walked away from Lt. Spiva's patrol unit and Lt. Spiva advised it appeared FLORESS was speaking on a cell phone. FLORES eventually came back to Lt. Spiva and I could hear a female voice asking if we had a search warrant. I could not understand everything that was being said and asked FLORES if his attorney could call me.

22. I provided my cell phone number however, no one called. After waiting a few minutes, I had Lt. Spiva contact FLORES again. FLORES said I needed to speak with his attorney. FLORES said he did not have a name or number for his attorney and said his sister was coordinating that. FLORES also would not provide me with his sister's phone number. FLORES did not ever clearly relinquish his written consent to search his cell phone however, I decided against continuing with the search due to his failure to continue his cooperation.

23. On Wednesday, April 7, 2021 at approximately 8:05 p.m., I provided the cell phone to BIA Officer Leander Eckiwada, who then submitted the cell phone into the BIA Concho Agency Evidence POD in Concho, Oklahoma.

24. On Monday, April 12, 2021, BIA Officer/Evidence Technician Kaydie Burton retrieved the cell phone from the BIA Concho Agency Evidence POD to gather and photograph nomenclature and other distinguishable markings to assist with the identification of the cell phone for further court process. Officer Burton advised when she took the protective cover off the back of the cell phone, she observed that the cell phone was being held together by tape and that if she attempted to pull the tape off the back of the cell phone, she was worried the cell phone would break apart. Officer Burton sent me photographs she took of the cell phone and I observed the cell phone as being what appeared to be a black iPhone that had black tape on the back and a broken screen. Officer Burton re-submitted the cell phone back into the BIA Concho Agency Evidence

POD for safekeeping.

25. On Monday, April 12, 2021 at approximately 3:25 p.m. I conducted a follow up interview with R.T. R.T. advised she is both a Crow and Cheyenne and Arapaho Indian but confirmed she was enrolled in the Crow Tribe. On April 16, 2021, I received a certificate degree of Indian blood for R.T., which confirmed she possessed Indian blood and is an enrolled tribal member with the Crow Tribe of Indians of Montana, a federally recognized tribe. R.T. is an American Indian within the meaning of federal law.

26. R.T. provided information from the Monday, March 29, 2021 incident. R.T. said he (FLORES) was standing up in the stall next to her and that most women sit down. R.T. recognized the (FLORES's) cell phone as being a black iPhone with a black cover or case. R.T. said he (FLORES) was moving the cell phone toward the rear of the stall. R.T. was sitting on the pot at that time. R.T. said she was wearing pants and panties and said they were pulled down to her knees. R.T. confirmed she was naked from her waist to her knees. R.T. said he (FLORES) was moving the cell phone toward the rear of the stall where her butt was exposed. R.T. confirmed her vaginal area was exposed but was not certain if he (FLORES) captured video of her exposed vaginal area due to her posture on the toilet.

27. On Wednesday, April 21, 2021, I received a supplemental report from Canadian County Deputy Michael Larimer reference to his investigative actions concerning this incident on Wednesday, March 31, 2021. Deputy Larimer advised he was dispatched to the Concho Travel Center Casino regarding an alleged male subject taking pictures of a women in the female bathroom. Deputy Larimer conducted an interview with FLORES in his patrol vehicle. Deputy Larimer explained FLORES his *Miranda* warnings and FLORES waived his rights and agreed to speak with Deputy Larimer.

9

28. FLORES explained he had no intentions of going into the women's restroom and was unaware it was the women's restroom. FLORES explained to Deputy Larimer that he (FLORES) was advised by casino security that a woman said he (FLORES) was filming her in the bathroom. FLORES said he offered for the casino security to look in his phone, but they would not. FLORES told Deputy Larimer that he could go ahead and search his phone however, Deputy Larimer said he needed a warrant to search his phone. FLORES told Deputy Larimer that he did not need a warrant. Deputy Larimer confirmed permission to look at FLORES's phone and FLORES showed Deputy Larimer his phone and handed Deputy Larimer his phone briefly. Together, Deputy Larimer and FLORES scrolled through the pictures and video sections of the phone. Deputy Larimer's search of FLORES's cell phone was brief and was controlled by both Deputy Larimer and FLORES at different times.

29. On Wednesday, April 21, 2021, I confirmed with Deputy Larimer that he did not observe any photographs or video concerning the allegation or timeframe when the incident occurred.

## CONCLUSION

30. Based upon the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of the foregoing criminal violation is located in the DEVICE identified in Attachment A and I seek a warrant to search the DEVICE in Attachment A for the items listed in Attachment B. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Micah Ware
Special Agent
Bureau of Indian Affairs

SUBSCRIBED AND SWORN to before me this 26th day of April, 2021.

*Amanda Mayfield Green*
Amanda Green
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF ITEM TO BE SEARCHED

1. Black iPhone XS Max with broken screen. (With Protective Cover)

## ATTACHMENT B

## ITEMS TO BE SEIZED

Images or visual depictions of the private areas of any individual.

Images or visual depictions of any individual under circumstances in which the individual had a reasonable expectation of privacy.

Items or files containing or displaying passwords, access codes, usernames or other identifiers necessary to examine or operate items, software or information seized.

Correspondence, to include emails and chat logs, or other documents (whether digital or written) pertaining to the production, possession, receipt, origin, or distribution of images involving video voyeurism.

Correspondence, to include emails and chat logs, or other documents (whether digital or written) exhibiting an interest in video voyeurism.

Items that would tend to establish dominion and control of a device.